Leonard J. KRAJCI and Renee
M. Krajci

v.

**PROVIDENT CONSUMER DISCOUNT
CO.**

Civ. A. No. 79–2998.

United States District Court,
E. D. Pennsylvania.

Sept. 28, 1981.

Eric L. Frank, Community Legal Services, Inc., Philadelphia, Pa., for plaintiffs.

Sheldon C. Jelin, Philadelphia, Pa., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SHAPIRO, District Judge.

In this case tried to the court without a jury, the plaintiff borrowers contend that the defendant lender violated certain disclo-sure provisions of the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.* Plaintiffs seek to recover statutory damages, attorneys fees and costs under 15 U.S.C. § 1692K.

Plaintiffs, Leonard J. and Renee M. Krajci, and defendant, Provident Consumer Discount Co. ("Provident"), entered into a consumer loan transaction on August 16, 1978. In order to complete the transaction, plaintiffs executed several loan documents drafted by Provident. The plaintiffs have contended that Provident violated the TILA in the following respects: (1) Provident failed to disclose its security interest in the proceeds of or refunds due under the credit insurance purchased by plaintiffs; (2) Provident erroneously disclosed the charges for credit life insurance and credit accident and health insurance as part of the amount financed instead of the finance charge; (3) Provident failed to clearly and conspicuously disclose its security interest in plaintiffs' real and personal property; and (4) Provident failed to disclose the amount or method of computing the charge deducted from the rebate of the unearned finance charge credited to plaintiffs when they prepaid the loan. Provident denies these allegations and contends that plaintiffs' claims are barred by the applicable statute of limitations. Based upon the following findings of fact and conclusions of law, judgment is entered for the defendant.

### Findings of Fact

1. Plaintiffs are Leonard J. Krajci and Renee M. Krajci, husband and wife, residing at 1822 Ruan Street, Philadelphia, Pennsylvania.

2. Defendant Provident Consumer Discount Company is a Pennsylvania corporation conducting business at 42 South 15th Street, Philadelphia, Pennsylvania.

3. Provident, in the ordinary course of its business, extends or offers to extend credit for which either a finance charge is or may be imposed or which is payable in more than four (4) installments.

4. Mr. and Mrs. Krajci entered into a consumer credit transaction with Provident on August 16, 1978.

5. The transaction was a personal loan by which plaintiffs obtained cash from defendant.

6. At the time of the transaction on August 16, 1978, plaintiffs executed the following loan documents:

(a) Personal Credit Insurance Authorization

(b) Note, Security Agreement, and Disclosure Statement

(c) Credit Property Insurance Disclosure

(d) Judgment Note

(e) Mortgage

(f) Application for Secured Credit

(g) Notice of Right of Rescission

7. Prior to the execution of the loan documents, defendant's representative reviewed with plaintiffs the terms, conditions, and options of the proposed loan contract, including all the insurance provisions thereof.

8. Prior to the execution of the loan documents, plaintiffs executed the Personal Credit Insurance Authorization form.

9. The Personal Credit Insurance Authorization contained the following statement in bold print:

**CREDIT LIFE OR CREDIT ACCIDENT AND HEALTH (DISABILITY) INSURANCE IS NOT REQUIRED IN CONNECTION WITH THIS EXTENSION OF CREDIT TO YOU AND YOUR DECISION WITH REGARD TO THE PERSONAL INSURANCE WILL NOT AFFECT THE TOTAL AMOUNT OF CREDIT WHICH HAS ALREADY BEEN APPROVED FOR YOU.** (emphasis supplied)

10. The loan document provides that: "If you elect credit insurance these premiums will be added to the amount of credit approved for you.

Credit Life $108.24 (for term of transaction)
Credit A & H (disability) $184.01 (for term of transaction)"

11. The Personal Credit Insurance Authorization also included the following statement:

"I have received a fully completed and executed copy of this form. I have reviewed the amount financed options set forth below and understand that if I choose an amount financed option that includes any of the insurance coverages I am authorizing the creditor to pay the insurance premiums on my behalf. I have *voluntarily chosen* the following amount financed option:

Option 4: Amount financed with credit life and A & H (disability)"

(emphasis supplied)

12. Prior to the execution of the loan documents, plaintiffs executed the Credit Property Insurance Disclosure form.

13. The Credit Property Insurance Disclosure form contained the following statement:

I fully understand that the purchase of this insurance is *voluntary* and *not a requirement of this transaction.*

(emphasis supplied)

14. On the Credit Property Insurance Disclosure form, plaintiff Leonard Krajci indicated by checkmark that he had elected to purchase Credit Property Insurance.

15. The Note, Security Agreement and Disclosure Statement contained the following provision:

F. OPTIONAL INSURANCE:

1. LIFE/ACCIDENT AND HEALTH INSURANCE: Provident does not require life or accident & health insurance nor is it a factor in approval of the extension of credit. No such insurance is to be provided unless Borrower who is to be insured signs the appropriate authorization below. Any such insurance obtained by Provident at Borrower's request shall be subject to the terms and conditions of such policy. Provident is assisting Borrower in obtaining such insurance as a convenience for Borrower and Provident shall not be liable for any failure to obtain or defect in obtaining such insurance.

16. Mr. Krajci signed subsection (a) of the above paragraph. This subsection stated "Borrower *does not* want credit life or accident and health insurance."

17. Nonetheless, computations of plaintiffs' insurance were made under subsection (b) of paragraph (F)(1.):

Credit Life Insurance Premium .... $108.24
Credit Accident & Health Insurance Premium .............. $184.01
Total Credit Life and Accident & Health Insurance Premiums ..... $292.25

18. These computations were made and explained to Mr. Krajci before he signed the Note, Security Agreement, and Disclosure Statement.

19. The plaintiff intended to purchase insurance and signed the contract on the wrong line.

20. The error in the placing of his signature was caused by the plaintiff.

21. Defendant informed plaintiffs of the error by letter dated August 18, 1978.

22. Leonard Krajci's demeanor in testifying was unconvincing and his testimony that the insurance provisions of the contract were never explained to him and that he did not know he was purchasing insurance was devoid of credibility. Renee Krajci did not testify.

23. Plaintiffs fully understood and knew the insurance they were purchasing and voluntarily elected to purchase credit insurance. The testimony of defendant's manager, Edward J. Eberwein, to that effect was credible and worthy of belief.

24. Defendant did not cause plaintiffs to involuntarily purchase credit insurance that they did not desire.

25. Because plaintiffs stated that they desired to purchase credit insurance, the following insurance was sold to them:

(a) Life insurance at a cost of one hundred eight dollars and twenty-four cents ($108.24);

(b) Accident and Health Insurance at a cost of one hundred eighty-four dollars and one cent ($184.01);

(c) Personal property insurance at a cost of ninety-seven dollars and fourteen cents ($97.14).

26. Provident included these insurance charges in the amount financed and disclosed the amount financed as four thousand nine hundred twenty dollars ($4,920.00), the finance charge as two thousand seven dollars ($2,007.00) and the annual percentage rate as 22.94%.

27. The Note, Security Agreement and Disclosure Statement contained the following provision:

M. INSURANCE: If Borrower fails to obtain any required insurance, Provident may obtain same at Borrower's expense. Borrower irrevocably assigns to Provident all rights to receive proceeds of insurance, directs any insurer to pay all proceeds directly to Provident and authorizes Provident to endorse Borrower's name to any draft for the proceeds and to make, settle and compromise all claims. Provident shall be made loss payee on all insurance. All insurers shall be authorized by the laws of Pennsylvania to conduct business in Pennsylvania.

28. The various documents clearly and conspicuously disclose that the purchase of credit insurance was not a requirement for the extension of credit.

29. The Note, Security Agreement and Disclosure Statement contained the following provision:

E. SECURITY: Until the Total of Payments and all other obligations of Borrower to Provident, direct, or contingent, joint, several or independent, now or hereafter existing, due or to become due, whether created directly or acquired by assignment or otherwise, have been paid in full and as security therefor, Borrower grants Provident a security interest in the following assets and all cash and non-cash proceeds thereof ("Collateral"):

2. All household goods of every kind now owned or hereafter acquired within ten days of this date by Borrower, located in or about Borrower's premises set forth above.

3. Real Property (by a Mortgage and Judgment Note of even date):

Address of Real Property: *1822 Ruan St., Phila., Pa.*

4. Other Real Property: The Judgment Note of even date, when recovered or recorded constitutes a lien on all real property owned by Borrower in the County where such judgment is recovered or recorded.

AFTER ACQUIRED REAL AND PERSONAL PROPERTY OF BORROWER WILL BE SUBJECT TO THE SECURITY INTEREST SET FORTH HEREIN AND THE COLLATERAL SECURES FUTURE AND OTHER INDEBTEDNESS OF BORROWER TO PROVIDENT.

30. Under this paragraph, Provident acquired a security interest in:

a) Mr. & Mrs. Krajci's residence

b) Mr. & Mrs. Krajci's household goods

31. The security interest taken in plaintiffs' real and personal property was clearly described and defined by the above paragraph.

32. On June 25, 1979, after the 60 month loan had continued for 10 months, 9 days, Mr. and Mrs. Krajci prepaid the loan in full.

33. The Note, Security Agreement and Disclosure Statement contained the following provision:

D. REBATE FOR PREPAYMENT: Borrower may at any time prepay all or part of the unpaid Total of Payments and upon prepayment in full by cash, new loan, renewal, refinancing or otherwise will be entitled to a rebate of the interest computed under the Rule of 78's; provided, however, that Provident shall not refund unearned interest amounting to less than one dollar ($1.00) nor shall Provident refund the Prepaid Finance Charge.

The Rule of 78's is a popular name given to a mathematical formula for computing the amount of rebate a borrower is entitled to upon repayment of a loan.

34. Defendant allowed a rebate of 49 months unearned-interest. The rebate was calculated under the Rule of 78's. Defendant allowed a rebate of 50 months unearned

credit insurance premiums. The rebate was calculated under the Rule of 78's.

35. The plaintiffs received the following rebates upon prepayment of the loan:

(a) Unearned interest rebate of one thousand three hundred thirty-nine dollars and eighty-nine cents ($1,339.89);

(b) Life insurance premium rebate of seventy-five dollars and forty-one cents ($75.41);

(c) Accident and health insurance premium rebate of one hundred twenty-eight dollars and twenty cents ($128.20);

(d) Property insurance rebate of eighty-one dollars ($81.00).

36. On August 16, 1979, plaintiff filed a motion for leave to proceed with this action *in forma pauperis.*

### *Statute of Limitations*

█ The one year statute of limitations under the TILA [1] begins to run on the date that the contract was executed. *Bartholomew v. Northampton National Bank of Easton,* 584 F.2d 1288, 1296 (3d Cir. 1978). In this case, the parties agree that the statute runs from August 16, 1978.

█ On August 16, 1979, plaintiff filed a motion to proceed *in forma pauperis* which attached the complaint plaintiffs proposed to file if such leave were granted. The court granted plaintiffs' motion on August 21, 1979 and the complaint was docketed on August 23, 1979. Defendant argues that the action was not instituted until this latter date. *See* Fed.R.Civ.P. 3. Although a complaint tendered *in forma pauperis* cannot technically be "filed" until leave to proceed *in forma pauperis* has been granted, the limitations period is tolled by the lodging of the complaint. *Leuzzi v. Provident National Bank,* No. 80–1757 (E.D.Pa. Sept. 5, 1980); *Mitchell v. Hendricks,* 68 F.R.D. 564, 568 (E.D.Pa.1975). Thus, the action was instituted on August 16, 1979

---

1. Section 1640(e) provides:

Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

and the issue is whether it was timely filed on that date. Defendant, relying on *Rust v. Quality Car Corral, Inc.*, 614 F.2d 1118 (6th Cir. 1980), contends that it was not.

In *Rust*, the court held that a complaint filed July 1, 1977 was barred by the TILA statute of limitations where the installment sales agreement was entered into on July 1, 1976. Contrary to the time computation method prescribed by Fed.R.Civ.P. 6(a), the court included the day of the underlying event and excluded the last day of the time period. Under the analysis set forth in *Rust*, the limitations period in this case would have expired on August 15, 1979 and plaintiffs' claims would be barred. However, we decline to follow *Rust* [2] and hold that plaintiffs' claims were timely filed.

■ Rule 6(a) of the Federal Rules of Civil Procedure states:

> (a) Computation. In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday. . . .

Where no contrary policy is expressed in a particular statute, considerations of liberality and leniency militate in favor of Rule 6(a)'s application. *Union National Bank of Wichita v. Lamb*, 337 U.S. 38, 69 S.Ct. 911, 93 L.Ed. 1190 (1949); *Bledsoe v. Department of Housing and Urban Development*, 398 F.Supp. 315 (E.D.Pa.1975).

■ No express policy in the TILA precludes the application of Rule 6(a)'s computation methods. Indeed, Rule 6(a) is particularly appropriate here because the TILA is a remedial statute and is to be liberally construed. *Eg., Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257 (3rd Cir. 1975). Therefore, we conclude that the first day of the one year limitation period should be excluded and the last day included; plaintiff's complaint filed on the anniversary of the transaction date was timely filed. *Lawson v. Conyers Chrysler, Plymouth, and Dodge Trucks, Inc.*, 600 F.2d 465 (5th Cir. 1979); *Gammons v. Domestic Loans of Winston-Salem, Inc.*, 423 F.Supp. 819 (M.D.N.C.1976).

*Security Interest in Insurance*

Section 1639(a)(8) of the TILA requires a creditor to disclose the following:

> A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

"Security interest" is not defined by the TILA, but the Federal Reserve Board ("Board"), pursuant to its statutory authority, has defined the term in Regulation Z, 12 C.F.R. § 226.1 *et seq*, as follows:

> (gg) "Security interest" and "security" mean any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens whether or not recorded, mechanic's, materialman's, artisan's, and other similar liens, vendor's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and

**2.** In *Rust*, the Sixth Circuit stated that its interpretation of 15 U.S.C. § 1640(e) was in concurrence with that of the Third Circuit in *Bartholomew v. Northampton National Bank, supra*. However, Bartholomew dealt with an action filed more than one year after the underlying transaction; the issue was when the statute began to run and not whether a claim filed exactly one year after the transaction was barred.

any interest in a lease when used to secure payment or performance of an obligation.

12 C.F.R. § 226.2(gg).[3]

Plaintiffs contend that the assignment of insurance proceeds in paragraph M of the Note, Security Agreement, and Disclosure Statement (see Finding of Fact 26, *supra*) creates a security interest in the credit life insurance, credit accident and health insurance and credit property insurance purchased by the plaintiffs. We do not agree. First, paragraph M is applicable only if Provident *requires* insurance to be purchased as a condition precedent to the extension of credit. We have found the various documents disclose clearly that the purchase of insurance for the extension of credit was not required.

■ Even if paragraph M were applicable to the purchase of optional credit insurance, no violation of the TILA would have been established. The Supreme Court has recently held that an assignment of returned or unearned insurance premiums similar to that in paragraph M does not create a security interest that must be disclosed under the TILA. *Anderson Brothers Ford and Ford Motor Credit Company v. Valencia,* —— U.S. ——, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981). The Supreme Court disagreed with the reasoning set forth in cases such as *Gennuso v. Commercial Bank & Trust Co.,* 566 F.2d 437 (3d Cir. 1977), relied on by plaintiffs; the Court noted with approval the Board's view that the disclosure of such incidental interests as those in insurance proceeds would not measurably further the TILA's purposes. Accordingly, we hold that Provident did not take a security interest in insurance proceeds under paragraph M and, therefore, did not violate the TILA's security interest disclosure provision.

*Disclosure of Insurance in Amount Financed*

Regulation Z requires charges for credit life, accident or health insurance to be included in the finance charge unless:

(i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and

(ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

12 C.F.R. § 226.4(a)(5); *accord,* 15 U.S.C. § 1605(b). Thus, if credit insurance is required as a prerequisite to the extension of credit, it must be disclosed as part of the finance charge. If the insurance is voluntary, it may be included in the amount financed.

■ Plaintiffs concede that Provident provided the Krajcis with a notice stating that the insurance was not required and we have so found. However, plaintiffs contend that the insurance was not voluntarily purchased and that a "separately signed affirmative written indication" of a desire to purchase insurance was never given because the statement Mr. Krajci signed read, "Borrower does not want credit life or accident and health insurance." The testimony at trial contradicted this statement. The credible testimony demonstrated that the insurance charges were explained to the Krajcis and the computations of the charges were made on the document before Mr. Krajci signed it. The evidence showed that the Krajcis desired and intended to purchase credit insurance and that Mr. Krajci merely signed the document on the wrong line. On the basis of these factual findings, we conclude that Mr. Krajci's signature, albeit misplaced, constituted a "separately signed affirmative written indication" of his desire

---

**3.** Pursuant to the Truth in Lending Simplification and Reform Act, 94 Stat. 132, 168, the Board has redefined the term "security interest." That regulation was not effective until April 1, 1981, long after this transaction, and compliance with it is not mandatory until April 1, 1982. *Anderson Brothers Ford and Ford Motor Credit Co. v. Valencia,* —— U.S. ——, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981).

to purchase credit insurance. Therefore, Provident did not violate the TILA by including the credit insurance charges in the amount financed.

### Failure to Disclose Clearly the Security Interest in After-Acquired Real and Personal Property

1. *Personal Property*

Regulation Z requires that all required disclosures must be made "clearly, conspicuously, in meaningful sequence." 12 C.F.R. § 226.6(a). Regulation Z also requires that a creditor provide a clear identification of the property, including after-acquired property, to which a security interest relates. 12 C.F.R. § 226.8(b)(5). Pennsylvania law limits the security interest a creditor can hold in after-acquired consumer goods; no interest attaches "unless the debtor acquires rights in them within 10 days after the secured party gives value." 12A P.S. § 9–204(4)(b). This 10 day limitation must also be disclosed under the TILA. *See e. g., Pollack v. General Finance Corp.*, 535 F.2d 295 (5th Cir. 1976) *reh. denied*, 552 F.2d 1142 (1977), *cert. denied*, 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977); *Tinsman v. Moline Beneficial Finance Co.*, 531 F.2d 815 (7th Cir. 1976).

Defendant's disclosure document contains two statements regarding a security interest in after-acquired consumer goods. (See Finding of Fact 28, *supra*). The first states that Provident has a security interest in household goods then owned or acquired within 10 days of the transaction. This statement is in small print; it accurately discloses the interest acquired under Pennsylvania law. *Griggs v. Provident Consumer Discount Co.*, 503 F.Supp. 246, 249 (E.D. Pa.1980); *Williams v. Provident Consumer Discount*, No. 79–4193 (E.D.Pa., October 10, 1980).

■ Following this, the form states in bold type: **"AFTER ACQUIRED REAL AND PERSONAL PROPERTY OF BORROWER WILL BE SUBJECT TO THE SECURITY INTEREST SET FORTH HEREIN..."** Plaintiff contends that this second statement, being more bold and con-

spicuous, suggests a more expansive security interest than that actually taken by Provident; therefore, it fails clearly to disclose the interest taken. If the statement in bold print were in a separate portion of the document, it might well be confusing or misleading. But these statements comprise one disclosure provision. The provision in bold print alerts the consumer that some after-acquired property will be subject to a security interest. Instead of misleading a consumer, the provision serves a useful purpose. Defendant has clearly and conspicuously disclosed the security interest it has acquired in personal property and has not violated the TILA. *Williams v. Provident Consumer Discount Co., supra; but see Griggs v. Provident Consumer Discount Co., supra.*

2. *Real Property*

■ Plaintiff similarly claims that Provident's disclosure provisions regarding the security interest it took in after-acquired real property are misleading and violate the TILA. This contention is equally without merit for the reasons stated above. *Williams, supra; but see Griggs, supra.*

### Failure to Disclose the Amount or Method of Computing the Charge Deducted from the Rebate

On June 25, 1979, ten months and nine days after the 60 month loan, plaintiffs prepaid their loan. Defendant rebated 50 months of unearned credit insurance premiums and 49 months of unearned interest. These rebates were calculated under the Rule of 78's as provided in the disclosure statement (see Finding of Fact 32, *supra*).

Regulation Z requires that a creditor's disclosure include:

(7) Identification of the method of computing any unearned portion of the finance charge in the event of prepayment in full of an obligation which includes precomputed finance charges and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate

of such unearned finance charge that will be credited to an obligation or refunded to the customer. If the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed.

This requirement of rebate identification is satisfied by a reference to the Rule of 78's, 12 C.F.R. § 226.818. Provident's disclosure statement stated that rebates would be computed under the Rule of 78's; this is sufficient under TILA and Regulation Z.

Plaintiffs contend that mere reference to the Rule of 78's is misleading where a creditor does not apply the Rule in a uniform manner within the same transaction, i. e., one manner is used to calculate unearned interest and another manner to calculate unearned insurance premiums.[4] The Federal Reserve Board Staff ("Staff") has addressed a similar issue under two Ohio statutes which provide for different methods of calculating rebates depending on when the loan is prepaid. The Staff concluded that:

§ 226.8(b)(7) does not require the disclosure of the complex details necessary to allow the customer to calculate the amount of every possible rebate, regardless of when prepayment in full may occur. Section 226.8(b)(7) simply aims to provide the customer with some basic information; such as, whether or not the customer receives a rebate of the precomputed but unearned financed charges, and the identification of the method whereby any rebate provided is calculated. Consequently, staff is of the view that a concise identification of the method used by the creditor in rebating the unearned portion of the finance charge, such as by reference to the "Rule of 78's," is sufficient for purposes of § 226.8(b)(7).

4. Plaintiffs do not contend that Provident violated any law by utilizing the different time periods in computing the charges. That difference is authorized by Pennsylvania law. Defendant rebated the insurance premiums pursuant to a Pennsylvania Insurance Department Regulation which does not permit a charge to be made "if less than fifteen days of a loan month has been earned." The finance charge was rebated in accordance with the Consumer Discount Company Act of April 8, 1937, P.L.

F.R.B. Unofficial Staff Interpretation No. 1168 (March 22, 1977), CCH Cons. Cred. Guide ¶ 31,561. This staff interpretation is entitled to great deference. *Williams v. Provident Consumer Discount Co., supra; see Anderson Brothers Ford and Ford Motor Credit Co. v. Valencia, supra; Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). Therefore, we conclude that defendant's rebate practice was lawful under the TILA, Regulation Z and Pennsylvania law and that there was no need to disclose the different methods of computing rebates for different items. *Williams, supra.*

### Conclusions of Law

1. This court has jurisdiction pursuant to 15 U.S.C. § 1640(e).

2. This action was timely filed and not barred by the one year statute of limitations set forth in 15 U.S.C. § 1640(e).

3. Provident did not take a security interest in credit insurance proceeds; therefore, there was no need to disclose such an interest.

4. Provident properly included the charges for credit life, accident and health insurance in the amount financed.

5. Provident clearly and adequately disclosed the security interest it took in plaintiffs' after-acquired real and personal property.

6. Provident adequately disclosed the method of computing the rebates to which plaintiffs were entitled upon prepayment of the loan.

7. Provident is not liable for any violation of the TILA with respect to this consumer transaction.

8. Judgment will be entered in favor of the defendant.

262, 7 P.S. § 6201 *et seq*, which requires refunds of "that portion of the interest . . . which the sum of the monthly balances originally scheduled to be outstanding during the *full months following* such prepayment in full bears to the sum of all monthly balances originally scheduled to be outstanding, both sums to be determined by the schedule of payments in the original contract. . ." 7 P.S. § 6214D (Purdon Supp. 1981–82) (emphasis supplied).