**Charles ARMINGTON**

v.

**SCHOOL DISTRICT OF PHILADELPHIA.**

**Civ. A. No. 90–3698.**

United States District Court, E.D. Pennsylvania.

Jan. 22, 1991.

---

Sharon Dietrich, Philadelphia, Pa., for plaintiff.

Andrew M. Rosen, Philadelphia, Pa., for defendant.

## MEMORANDUM

LUDWIG, District Judge.

Plaintiff and defendant move for summary judgment. Defendant asserts that this 42 U.S.C. § 1983 claim is time-barred by a two-year statute of limitations. The underlying constitutional issue is whether defendant as plaintiff's employer had reasonable suspicion to require plaintiff to submit to a drug test.[1] Fed.R.Civ.P. 56(b).

On June 5, 1990 plaintiff Charles Armington filed this action claiming that the School District of Philadelphia had violated his fourth amendment rights on February 5, 1988 when it directed him to undergo a urinalysis. Plaintiff was a part-time school bus driver. Upon his refusal to take the test, his employment was suspended. The complaint alleges that eventually he was constructively discharged. Complaint at

---

1. The parties agree that the fact record is complete with respect to the statute of limitations and reasonable suspicion issues. *See* Tr. of Oral Arg. at 21; Joint Pre–Trial Stip. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The movant must show that there is no triable issue. The nonmovant having the burden of proof at trial must point to affirmative evidence in the record—and not simply rely on allegations or denials in the pleadings—in order to defeat a properly supported motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Williams v. Borough of West Chester,* 891 F.2d 458, 460, 463–64 (3d Cir.1989).

¶ 33. Plaintiff does not contend that he was deprived of due process of law, but limits his cause of action to the alleged illegality of the required test. *See* Tr. of Oral Arg. at 2.

## I.

The following are agreed facts: [2]

Charles Armington was employed by the School District as a part-time bus driver on September 3, 1980. During his employment by the School District, Mr. Armington was a member of Local 1201 of the International Brotherhood of Firemen and Oilers, AFL–CIO ("Local 1201"). On February 5, 1988, Mr. Armington drove Route 2654, from the Widener Garage to the Levering School. Selma Jones, a bus attendant, rode the entire length of the route. Mr. Armington was about fifteen minutes late for work on February 5, 1988. At the corner of Arnold and Winona, Mr. Armington had a confrontation with an angry parent, who expressed displeasure that he was late. The remainder of Mr. Armington's route on February 5, 1988 was completed without incident.

On February 5, 1988 at approximately 8:55 a.m., a parent, who identified herself as Ms. Thompson and indicated that her son is picked up at the corner of Arnold and Winona, called the Transportation Services Department of the School District and complained about the driver of Route 2654. The parent told Transportation Services that the driver of her son's bus was late and could not stand up, and that she smelled marijuana in the bus. Ms. Thompson had never complained to Transportation Services before. Wanda Diggs, Administrator of Quality Services, decided that the driver of Route 2654 should be tested for drug use. Ms. Diggs' decision was based solely on the information contained in the "bus complaint/follow-up report" taken from Ms. Thompson. Mr. Armington's drug test was ordered pursuant to Article IX, Section 27(b) of the collective bargaining agreement between the School District and Local 1201.

George Phillips, a street supervisor for the School District, was instructed to meet Mr. Armington at the Levering School and to take him to Health Services for a drug test. Mr. Phillips had no authority to revoke the decision to test Mr. Armington for drug use. Mr. Phillips entered Mr. Armington's bus at the Levering School, but did not see or smell evidence of marijuana use. Mr. Phillips did not contact either Selma Jones or other witnesses to Mr. Armington's behavior that day before Mr. Armington was required to submit to the drug test. Mr. Phillips did not smell marijuana on Mr. Armington nor did he observe any evidence that Mr. Armington was intoxicated on February 5, 1988. Mr. Phillips and Mr. Armington travelled together to Health Services, where the test was to be administered.

Mr. Armington was met at Health Services by a representative of Local 1201. Mr. Armington did not want to be tested, because he felt that it was a violation of his rights, and he feared that he would test positive for alcohol because he had [drunk] several cocktails at a party the night before. Mr. Armington refused the drug test. Mr. Phillips reported Mr. Armington's refusal to his supervisor. Mr. Phillips told Mr. Armington that he was suspended as a result of his decision to refuse the test. On February 5, 1988, no School District employee told Mr. Armington that he could be fired for refusing the test, nor did Mr. Armington ask any School District employee whether or not he could be fired for refusing the test.

A hearing was held before Personnel Administrator Vicky Jones on March 10, 1988, as a result of Mr. Armington's refusal of the drug test. At that hearing, Mr. Armington was charged with insubordination under Article IX, Section 27(b) of the collective bargaining agreement for failure to submit to an appropriate medical examination on February 5,

---

**2.** These facts were agreed to in a joint pre-trial stipulation filed January 7, 1991.

1988. Based on Mr. Armington's entire work record and the charge of insubordination, Ms. Jones recommended Mr. Armington's termination to Robert Kovalchik, Manager of Non–Instructional Personnel, on March 11, 1988. Mr. Armington was informed of Ms. Jones' recommendation.

Mr. Armington had a hearing before Mr. Kovalchik on April 21, 1988, based on the same charge considered by Ms. Jones. In the letter scheduling the hearing before Mr. Kovalchik, Mr. Armington was advised that his status with the School District [might] be affected as a result of the hearing before Mr. Kovalchik. Based on Mr. Armington's entire work record and the charge of insubordination, Mr. Kovalchik recommended Mr. Armington's termination to George Branch, Acting Executive Director of Personnel Operations, on May 2, 1988. Mr. Branch approved the recommendation of dismissal. Mr. Branch's approval is the final step by the administration before dismissal, and Mr. Armington's termination was to be recommended to the Board of Education.

A letter of termination to Mr. Armington, dated May 16, 1988, was drafted. Mr. Armington believed that he had had the last hearing to which he was entitled. Mr. Armington would have been entitled to an appeal of his discharge to the Board of Education and then to the Court of Common Pleas under the Local Agency Law, or to request that his union take an appeal to a neutral arbitrator pursuant to the Collective Bargaining Agreement. Mr. Armington believed that he would lose retirement money if he were fired, rather than resign. Plaintiff did not ask any School District administrator about his pension rights or

the effect that termination would have on his retirement contributions made during his employment with the School District. Mr. Armington resigned because he believed that he would be fired, he had been advised to do so by the union, and he feared losing his retirement money if fired.

Stip. at ¶¶ 1–40.

## II.

As the parties agree, the applicable limitations period for plaintiff's § 1983 claim is two years. *Rose v. Bartle*, 871 F.2d 331, 347 (3d Cir.1989).[3] Def. mem. at 2; pltf. mem. at 1. Their dispute concerns when the claim accrued. *Compare* Def. mem. at 2 ("[P]laintiff was aware in his own mind on February 5, 1988, that requiring him to submit to drug testing violated his rights"), *with* pltf. mem. at 1 ("[Plaintiff] filed his lawsuit within two years of his separation from employment with the School District. He submitted his resignation letter on June 7, 1988").[4]

█ The accrual of plaintiff's § 1983 claims is governed by federal law. *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir.1982); *In re City of Philadelphia*, 705 F.Supp. 1097, 1099 (E.D.Pa.1989). *See also* 2 J. Cook & J. Sobieski, Civil Rights Actions 4.02, at 4–22.14 (1990). A cause of action accrues under federal law "when the plaintiff becomes aware, or should have become aware, of both the fact of injury and its causal connection to the defendant, although the plaintiff need not know that the defendant's conduct is tortious or unlawful." *Sowers v. Bradford Area School District*, 694 F.Supp. 125, 136 (W.D.Pa. 1988), *aff'd*, 869 F.2d 591 (3d Cir.), *judgment vacated for reconsideration*, 490

3. In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), it was held that in § 1983 suits, the court must select the most appropriate state limitations statute for all § 1983 claims. *See also Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). In Pennsylvania, the two-year statute of limitations for personal injury actions is applicable. *See Bartholomew v. Fischl*, 782 F.2d 1148, 1155 (3d Cir.1986); *Knoll v. Springfield Township School District*, 763 F.2d 584, 585 (3d Cir.1985).

4. Plaintiff's petition to proceed in forma pauperis filed May 31, 1990 along with a copy of his complaint tolled the statute of limitations on that date. *Jones v. Waters*, 563 F.Supp. 817, 818 (E.D.Pa.1983); *Krajci v. Provident Consumer Discount Co.*, 525 F.Supp. 145, 149–50 (E.D.Pa. 1981), *aff'd mem.*, 688 F.2d 822 (3d Cir.1982). Therefore, plaintiff's § 1983 claim must have accrued on or after May 31, 1988 to be timely.

U.S. 1002, 109 S.Ct. 1634, 104 L.Ed.2d 150 (1989), *judgment reinstated,* 887 F.2d 262 (3d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990). *See also Sandutch,* 684 F.2d at 254.

■ According to defendant, plaintiff's allegation of injury relates to the occurrence on February 5, 1988 when the School District directed plaintiff to submit to the drug test. Plaintiff concedes that he may have had an immediate cause of action for the suspension that resulted from his refusal on that date to be tested.[5] He argues that a separate cause of action accrued on June 7, 1988 when his employment was constructively terminated. Tr. of Oral Arg. at 5–7. *See Huggins v. Fulton,* 505 F.Supp. 7, 8 (M.D.Tenn.1980) ("Distinguished from those plaintiffs who were fired is the plaintiff in [this] case who submitted his resignation and thereby defined his own accrual date").

In *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503–04, 66 L.Ed.2d 431 (1980), the Supreme Court held:

> Determining the timeliness of [plaintiff's] EEOC complaint ... requires us to identify precisely the "unlawful employment practice" of which he complains.... Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.

*See also United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Price v. Litton Business Systems, Inc.,* 694 F.2d 963 (4th Cir. 1982).

Here, the limitations period on plaintiff's claim of constructive discharge did not begin to run with his suspension. The constructive discharge claim did not accrue until the loss of employment occurred. *See Centifanti v. Nix,* 865 F.2d 1422, 1433 (3d Cir.1989) ("[E]ven if we did not determine that the cause of action continued to accrue

each day [plaintiff's reinstatement petition was outstanding], we would nevertheless find the complaint not barred by the statute of limitations" because plaintiff's injury did not occur until his petition for reinstatement to the bar was denied by the state supreme court).

Until June 7, 1988 when he resigned, plaintiff's employment could not be said to have been terminated. *See Lendo v. Garrett County Bd. of Educ.,* 820 F.2d 1365, 1367 (4th Cir.1987) ("[W]hen plaintiff received [two 'not effective'] evaluations, he could not have known with any certainty that he would eventually be denied tenure"). At both the hearing on March 10, 1988 before the personnel administrator and on April 21, 1988 before the manager of non-instructional personnel, it was concluded that termination would be recommended to the next level of authority. But even when the case reached the final level of internal authority on May 2, 1988, the termination by the School District required the recommendation of the acting executive director of personnel operations and the action of the Board of Education. Stip. at ¶¶ 34, 37. There is evidence that the internal administrative process was close to completion on May 16, 1988 when a termination letter was drafted, but on June 7, 1988 this letter had not been sent to plaintiff. *See Lendo,* 820 F.2d at 1367 ("The Board may well have granted Lendo tenure despite the 'not effective' ratings"). Even after the Board of Education authorizes termination, an employee is entitled to appeal to the Court of Common Pleas under Local Agency Law,[6] or to request the union to go before a neutral arbitrator pursuant to the collective bargaining agreement. Stip. at ¶ 37.

Although plaintiff in May, 1988 did believe that defendant intended to proceed with termination, he did not know when that would occur or whether any internal administrative review would change that decision. *See Shield v. Gerhart,* 582 A.2d

---

5. *See Rutan v. Republican Party of Illinois,* —— U.S. ——, 110 S.Ct. 2729, 2737, 111 L.Ed.2d 52 (1990) (an employment action short of dismissal can state an independent cause of action for unconstitutional employment decisions).

6. 2 Pa.C.S.A. § 751 (Purdon Supp.1990).

153, 157 (Vt.1990) ("We are reluctant to determine an accrual date based upon intent to do an act when the act is not yet done. Not only would such a rule be difficult, if not impossible, to administer, but it ignores the reality that plaintiff could change her intent at any time until she takes action"); *Colburn v. Trustees of Indiana University,* 739 F.Supp. 1268, 1300–01 (S.D.Ind.1990) (although plaintiff may have expected he would not be re-appointed, actions by employer prior to dismissal "were mere recommendations").

The complaint alleges that the School District violated plaintiff's constitutional rights by directing the urinalysis without reasonable suspicion and, thereafter, constructively discharged him from employment for his refusal to be tested.[7] Complaint at ¶ 33. Plaintiff's constructive discharge claim accrued when he submitted his resignation letter on June 7, 1988 which was within the two-year limitations period.

## III.

■■■ The constitutional requisite for the compulsory urinalysis is reasonable suspicion that plaintiff was under the influence of drugs or intoxicants. If the School District, as state actor,[8] had information amounting to such suspicion, plaintiff does not contest the School District's right to demand the test under section 27(b) of the collective bargaining agreement. *See* Pltf. mem. at 11–12; pltf. exh. 5. Since the

drug test in this case was not to be conducted pursuant to a random or other suspicionless drug-testing program, the standard of reasonable suspicion is appropriate. *See Fraternal Order of Police Lodge No. 5 v. Tucker,* 868 F.2d 74, 77 (3d Cir.1989) ("[T]he Copeland [*v. Philadelphia Police Dept.,* 840 F.2d 1139 (3d Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989) ] standard applies in this case, as the urinalysis was not conducted pursuant to a random drug urinalysis program"). Def. mem. at 9; pltf. mem. at 12.

This standard requires an objective evaluation. *See O'Connor v. Ortega,* 480 U.S. 709, 726, 107 S.Ct. 1492, 1503, 94 L.Ed.2d 714 (1987) (O'Connor, J., plurality opinion).[9] The suspicion must be directed at a particular individual. *Copeland,* 840 F.2d at 1144.

Although the reasonable suspicion standard lacks some specificity, one court has noted that factors that may effect the reasonableness of the suspicion are "(1) the nature of the tip or information; (2) the reliability of the informant; (3) the degree of corroboration; and (4) other facts contributing to suspicion or lack thereof." *Security & Law Enforcement Employees Dist. Council 82 v. Carey,* 737 F.2d 187, 205 (2d Cir. 1984) (in the context of strip searches of prison guards).

*Copeland,* 840 F.2d at 1144.[10] These factors "are considered in the 'totality of the circumstances—the whole picture.' "

---

**7.** Although plaintiff was charged with insubordination and his entire employment record was reviewed by the hearing officers who recommended termination, defendant concedes that there is no causation issue. Tr. of Oral Arg at 9–10. If the test had not been directed, the employment termination proceedings would not have occurred.

**8.** *See Giglio v. Dunn,* 732 F.2d 1133, 1136 (2d Cir.), *cert. denied,* 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984) (school district is a state actor for § 1983 purposes).

**9.** Many arbitration decisions have determined the reasonableness required for a drug test by considering the safety sensitive position of a bus driver. *See, e.g., In re Regional Transportation District and Amalgamated Transit Union Local 1001,* 94 Lab.Arb. 117 (December 29, 1989); *In the Matter of Cleveland Bd. of Ed.,* 1988 BNA Lab.Arb.Lexis 3288 (October 20, 1988); *In re*

*Trailways, Inc.,* 88 Lab.Arb. 1073 (May 18, 1987). All of these decisions relied on a fact-specific inquiry to determine whether the employer had reasonable suspicion that the driver was using or was under the influence of drugs.

**10.** In the context of a *Terry* stop, the Supreme Court recently commented:

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Alabama v. White,* —— U.S. ——, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990).

 

*White,* 110 S.Ct. at 2416 (citing *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). *See Everett v. Napper,* 833 F.2d 1507, 1511 n. 5 (11th Cir.1987) (applying the totality of the circumstances approach to a § 1983 case).

In a § 1983 action plaintiff has the burden of proving that defendant lacked reasonable suspicion. *See Edwards v. City of Philadelphia,* 860 F.2d 568, 572–73 (3d Cir. 1988) (plaintiff has burden to prove all essential elements in a § 1983 case, *e.g.,* excessive force in an arrest).

 Here defendant acknowledges that its decision to have plaintiff tested "was based solely on the information contained in the 'bus complaint/follow-up report' taken from" the parent's telephone complaint. Stip. at ¶ 12. That complaint dated February 5, 1988 at 8:55 states under the heading "Nature of Complaint":

> Bus come 8:50—pick up 8:15—Doors open—smell of marijuana—driver couldn't stand up.
>
> Different driver in p.m.
>
> Parent called transportation services immediately after incident.

Pltf. exh. 1.

This is not a strong case. However, given the circumstances and the nature of plaintiff's job, the information reported by the parent was sufficient to raise a suspicion of recent drug use by plaintiff. *See White,* 110 S.Ct. at 2416; *Everett,* 833 F.2d at 1511 n. 5. The bus arrived at the bus stop at least 15 minutes late, perhaps as much as 35 minutes. Stip. at ¶ 5; pltf. exh. 1. In addition, the sequence of "doors open—smell of marijuana—driver couldn't stand up" leads to the inference that the parent standing at the front door of the bus when her child was to board smelled an aroma of marijuana smoke that emanated from the area where the driver was sitting. The phrase "driver couldn't stand up" taken with the smell of marijuana could reasonably lead to a suspicion that plaintiff was under the influence of drugs when confronted that morning.

Plaintiff has not shown or given any reason for defendant to doubt the reliability of the parent. The parent identified herself by name and phone number. Her child attended Levering School. She identified the bus stop and informed defendant that the bus was late. Although defendant's administrator did not attempt to corroborate the parent's complaint, the total circumstances provided a definite basis for suspecting that plaintiff was under the influence of drugs. Plaintiff's refusal to be tested because it would violate his rights and because of his earlier drinking did not substantially diminish the reasons for believing he may have been using marijuana.

Inasmuch as plaintiff has failed to prove that defendant's suspicion that he was under the influence of drugs was lacking or unreasonable, defendant's motion for summary judgment must be granted. *See Edwards,* 860 F.2d at 573. Fed.R.Civ.P. 56(c).